UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------

STEPHEN BUSHANSKY,

              Plaintiff,

      v.

BLUEROCK RESIDENTIAL GROWTH
REIT, INC., R. RAMIN KAMFAR, I. BOBBY
MAJUMDER, ROMANO TIO, ELIZABETH
HARRISON, and KAMAL JAFARNIA,

           Defendants.

---------------------------------------------------------------

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

Case No.

**COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS**

JURY TRIAL DEMANDED

Plaintiff Stephen Bushansky ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE AND SUMMARY OF THE ACTION**

1.    This is an action brought by Plaintiff against Bluerock Residential Growth REIT, Inc. ("Bluerock" or the "Company") and the members of its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a) and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which Bluerock will be acquired by Blackstone Inc.

("Blackstone") through Blackstone's affiliates Badger Parent LLC ("Parent") and Badger Merger Sub LLC ("Merger Sub") (the "Acquisition").

2.     On December 20, 2021, Bluerock issued a press release announcing it had entered into an Agreement and Plan of Merger dated December 20, 2021 (the "Merger Agreement") to sell Bluerock to Blackstone.   Under the terms of the Merger Agreement, Bluerock stockholders will be entitled to receive $24.25 in cash for each share of Bluerock common stock they own.  The Acquisition is valued at approximately $3.6 billion.

3.     Prior to the Acquisition, the Company separately intends to spin off its single-family rental business to its shareholders (the "Spin-Off" and together with the Acquisition, the "Proposed Transaction") through the taxable distribution to shareholders of all the outstanding shares of common stock of a newly formed real estate investment trust named Bluerock Homes Trust, Inc. ("BHOM"), which will be externally managed by an affiliate of Bluerock Real Estate. BHOM will own interests in approximately 3,400 homes, including 2,000 through preferred/mezzanine investments, located in fast growing, high quality of life and knowledge economy markets across the United States.  The Company's shareholders will receive shares of BHOM, with a current implied Net Asset Value estimated at $5.60, for each share of Company common stock.

4.     On March 11, 2022, Bluerock filed a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC.  The Proxy Statement, which recommends that Bluerock stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) the background of the Proposed Transaction; (ii) Bluerock's financial projections relied upon by the Company's financial advisor Morgan Stanley

& Co. LLC ("Morgan Stanley") in its financial analyses; (iii) the valuation analyses prepared by Morgan Stanley in connection with the rendering of its fairness opinion; and (iv) potential conflicts of interest faced by Morgan Stanley.  The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as Bluerock stockholders need such information to make a fully informed decision whether to vote in favor of the Proposed Transaction or seek appraisal.

5.      In short, unless remedied, Bluerock's public stockholders will be forced to make a voting or appraisal decision without full disclosure of all material information concerning the Proposed Transaction.  Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

### JURISDICTION AND VENUE

6.      This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

7.      This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391 because Bluerock maintains its principal executive offices

in this district, and each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District.

**THE PARTIES**

9.      Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Bluerock.

10.      Defendant Bluerock is a Maryland corporation, with its principal executive offices located at 1345 Avenue of the Americas, 32nd Floor, New York, New York 10105.  Bluerock is a real estate investment trust that owns and operates apartment communities throughout the United States.  Bluerock's common stock trades on the New York Stock Exchange under the ticker symbol "BRG."

11.      Defendant R. Ramin Kamfar ("Kamfar") is Chief Executive Officer ("CEO") of the Company, and has been Chairman of the Board and a director since August 2008.  Defendant Kamfar also served as President of the Company from April 2014 until October 2017.

12.      Defendant I. Bobby Majumder ("Majumder") has been Lead Independent Director since May 2017 and a director of the Company since January 2009.

13.      Defendant Romano Tio ("Tio") has been a director of the Company since January 2009.

14.      Defendant Elizabeth Harrison ("Harrison") has been a director of the Company since July 2018.

15.      Defendant Kamal Jafarnia ("Jafarnia") has been a director of the Company since June 2019.

16.     Defendants identified in paragraphs 11-15 are referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

17.     Blackstone is a global leader in real estate investing.  Blackstone's real estate business was founded in 1991 and has $230 billion of investor capital under management.  It is the largest owner of commercial real estate globally, owning and operating assets across every major geography and sector, including logistics, multifamily and single-family housing, office, hospitality and retail.

18.     Parent is a Delaware limited liability company and an affiliate of Blackstone.

19.     Merger Sub is a Delaware limited liability company and a wholly owned subsidiary of Parent.

## SUBSTANTIVE ALLEGATIONS

**Background of the Company**

20.     Bluerock is a real estate investment trust that focuses on developing and acquiring a diversified portfolio of institutional-quality highly amenitized live/work/play apartment communities in demographically attractive knowledge economy growth markets to appeal to the renter by choice.  The Company's objective is to generate value through off-market/relationship-based transactions and, at the asset level, through value-add improvements to properties and to operations.

21.     As of September 30, 2021, the Company held an aggregate of 19,772 units, comprised of 17,632 multifamily units and 2,140 single-family residential homes.  The aggregate number of units are held through seventy-two real estate investments, consisting of thirty-nine

consolidated operating investments and thirty-three investments held through preferred equity, loan or ground lease investments.  As of September 30, 2021, the Company's consolidated operating investments were approximately 96.2% occupied.

22.     On November 4, 2021, the Company announced its third quarter 2021 financial results.  Net income attributable to common stockholders for third quarter 2021 was $12.5 million or $0.45 per diluted share, as compared to net loss attributable to common stockholders of ($17.1) million or ($0.71) per diluted share in the prior year period.  Rental revenues grew 2.3% to $49.8 million from $48.7 million in the prior year period.  Property Net Operating Income ("NOI") increased 5.3% to $30.6 million from $29.1 million in the prior year period.  Same store revenues grew 7.7% and same store NOI increased 9.2%, as compared to the prior year period.  Same store average rent increased 7.1% and same store average occupancy expanded 30 basis points, as compared to the prior year period.  Portfolio occupancy was 96.2% on September 30, 2021, up 110 basis points from the prior year.  Reflecting on the Company's results and looking to the future, defendant Kamfar stated:

> The accelerated improvement in lease growth, same store revenue and NOI growth continues to validate our strategy focusing on building a highly amenitized Class A affordable first-ring suburban portfolio in knowledge economy growth markets.  In addition, we increased our investment pace throughout the quarter and expect it to carryforward into the end of the year.  We also sold three investments at attractive cap rates below third-party NAV estimates which generated almost $100 million in net proceeds and will produce solid returns for shareholders upon capital reinvestment.

**The Proposed Transaction**

23.     On December 20, 2021, Bluerock issued a press release announcing the Proposed Transaction, which states, in relevant part:

New York, NY (December 20, 2021) – Bluerock Residential Growth REIT, Inc. (NYSE American: BRG) (the "Company") today announced that it has entered into a definitive agreement with affiliates of Blackstone Real Estate ("Blackstone") under which Blackstone will acquire all outstanding shares of common stock of BRG for $24.25 per share in an all-cash transaction valued at $3.6 billion (the "Acquisition").

Under the terms of the agreement, Blackstone will acquire 30 multifamily properties comprising approximately 11,000 units as well as a loan book secured by 24 multifamily assets. The properties consist of high-quality garden-style assets with significant green space and resort-style amenities, built, on average, in 2000. The majority of the properties are located in Atlanta, Phoenix, Orlando, Denver and Austin.

Prior to the Acquisition, the Company separately intends to spin off its single-family rental business to its shareholders (the "Spin-Off" and together with the Acquisition, the "Transaction") through the taxable distribution to shareholders of all of the outstanding shares of common stock of a newly formed real estate investment trust named Bluerock Homes Trust, Inc. ("BHOM"), which will be externally managed by an affiliate of Bluerock Real Estate. BHOM will own interests in approximately 3,400 homes, including 2,000 through preferred/mezzanine investments, located in fast growing, high quality of life and knowledge economy markets across the United States. The Company's shareholders will receive shares of BHOM, with a current implied Net Asset Value estimated at $5.60 (based on the midpoint of the valuation range provided by Duff & Phelps, independent financial advisor to the Company's board of directors), for each share of Company common stock. There can be no assurance that the trading price upon a listing of BHOM will be equal to or greater than this estimated NAV.

The Transaction has been unanimously approved by the Company's board of directors and the Acquisition, excluding the value of BHOM, represents a premium of approximately 124% over the unaffected closing stock price on September 15, 2021, the date prior to a media article reporting that the Company was exploring strategic options including a sale.

"We are very proud to enter into a transaction that delivers tremendous value to our shareholders. We believe the substantial premium to our historic trading price is a testament to our success in building a best-in-class institutional-quality multifamily apartment portfolio in our attractive knowledge-economy target markets, along with the robust process run by the board of directors and management to secure maximum value for our shareholders," said Ramin Kamfar, Company Chairman and CEO.

Asim Hamid, Senior Managing Director at Blackstone Real Estate, said, "Bluerock's portfolio consists of high-quality multifamily properties in markets

across the U.S. experiencing some of the strongest fundamentals.  We look forward to bringing our best-in-class management to these properties to ensure they continue to be operated at the highest standards for the benefit of tenants and the surrounding communities."

Completion of the Acquisition, which is currently expected to occur in the second quarter of 2022, is contingent upon consummation of the Spin-Off, as well as customary closing conditions, including the approval of the Company's shareholders, who will vote on the transaction at a special meeting on a date to be announced.   The Acquisition is not contingent on receipt of financing by Blackstone.

Most members of the Company's senior management, along with certain entities related to them, have agreed to retain their interests in the Company's operating partnership, which will hold the assets related to the single-family rental business upon completion of the Spin-Off, rather than receiving cash consideration.

Morgan Stanley & Co. LLC and Eastdil Secured LLC are the Company's lead financial advisors with BofA Securities also serving as an advisor.  Wachtell, Lipton, Rosen & Katz, Kaplan Voekler Cunningham & Frank, PLC, and Vinson & Elkins, LLP are serving as the Company's legal counsel.  Barclays and Wells Fargo Securities LLC are Blackstone's financial advisors and Simpson Thacher & Bartlett LLP is Blackstone's legal advisor.

### Insiders' Interests in the Proposed Transaction

24.     Bluerock insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Bluerock.

25.     Notably, certain Company insiders stand to reap substantial financial benefits for securing the deal with Blackstone.  Under the terms of the Merger Agreement, the Company may grant cash retention awards with an aggregate value of up to $1.5 million, with any awards to be paid in full immediately prior to the merger effective time.

26.     Moreover, if they are terminated in connection with the Proposed Transaction, Bluerock's executive officers stand to receive substantial cash severance payments, as set forth in the following table:

| Named Executive Officer (1) | Cash ($)(1) | Equity ($)(2) | Total ($) |
|---|---|---|---|
| R. Ramin Kamfar | 4,404,103 | 1,921,106 | 6,325,209 |
| Jordan B. Ruddy | 2,599,751 | 1,446,729 | 4,046,480 |
| James G. Babb, III | 2,287,049 | 2,674,204 | 4,961,253 |
| Ryan S. MacDonald | 3,177,627 | 4,477,402 | 7,655,029 |
| Christopher J. Vohs | 1,472,635 | 965,928 | 2,438,563 |
| Michael L. Konig | 2,263,821 | 3,518,256 | 5,782,077 |

## The Proxy Statement Contains Material Misstatements or Omissions

27.     The defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to Bluerock's stockholders.  The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote in favor of the Proposed Transaction or seek appraisal.

28.     Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) the background of the Proposed Transaction; (ii) Bluerock's financial projections relied upon by the Company's financial advisor Morgan Stanley in its financial analyses; (iii) the valuation analyses prepared by Morgan Stanley in connection with the rendering of its fairness opinion; and (iv) potential conflicts of interest faced by Morgan Stanley.  Accordingly, Bluerock stockholders are being asked to vote for the Proposed Transaction without all material information at their disposal.

### *Material Omissions Concerning the Background of the Proposed Transaction*

29.     The Proxy Statement omits material information regarding the sale process leading to the Proposed Transaction.

30.     For example, the Proxy Statement sets forth that "28 [parties involved in the sale process] executed non-disclosure agreements with the Company."  Proxy Statement at 35.

31.     The Proxy Statement fails, however, to disclose whether the non-disclosure agreements included don't-ask-don't-waive ("DADW") standstill provisions and, if so, (i) whether prior to their execution, the Board was apprised that the non-disclosure agreements executed with twenty-eight potential acquirers contained DADW standstill provisions; and (ii) the Board's rationale for having DADW standstill provisions included in the non-disclosure agreements entered into with twenty-eight potential acquirers. *See In re Ancestry.com, Inc. S'holder Litig.*, Consol. C.A. No. 7988 at 228 (Del. Ch. Dec. 17, 2012) (Transcript) ("*Ancestry*").

32.     Additionally, the Proxy Statement sets forth, as a reason for the recommendation of the Proposed Transaction by the Board, the Board's view that:

- [the Board's] right under the merger agreement, in response to unsolicited acquisition proposals, to furnish information to and conduct negotiations with third parties in certain circumstances [.]

*Id*. at 41.  This representation by the Board is false or misleading with respect to the twenty-eight potential acquirers who may be restricted from making a topping bid for the Company through DADW standstill provisions in each of their non-disclosure agreements.  The Proxy Statement requires additional disclosure to clarify that absent the Company's decision affirmatively to waive the DADW standstill provisions in each of the non-disclosure agreements, none of the parties to the non-disclosure agreements can approach Bluerock to request a waiver of the standstill in order to present an offer to purchase shares of Bluerock in a consensual merger or other form that might constitute a Company takeover proposal under Section 6.3 of the Merger Agreement with

Blackstone. *See Ancestry,* Consol. C.A. No. 7988 at 178-179 ("if the seller for some inattentive reason doesn't waive the non-waiver provision, and you don't tell the stockholders that, and you're also advertising that there is the ability for people to make a superior proposal, and then you're leading the stockholders to believe that the people who are legally precluded from even requesting a waiver are within the category of people who can make the offer, that strikes me as misleading, because it's not in fact the case. Because there's ten parties in the world who would have to breach an obligation in order to even request the ability to put on the table a potentially superior proposal. And people are voting in ignorance to that. It's not just an ordinary standstill.").

33.     Moreover, in connection with the Proposed Transaction, in addition to Morgan Stanley, the Company selected Eastdil Secured Advisors LLC ("Eastdil") and BofA Securities, Inc. ("Bank of America"), to serve as the Company's financial advisors in connection with a potential strategic transaction.

34.     The Proxy Statement fails, however, to disclose Bank of America's specific role in connection with the proposed transactions and the amount of fees paid or expected to be paid by the Company to Eastdil and Bank of America in connection with the Proposed Transactions.

35.     The omission of this information renders the statements in the "Background of the Merger" and "Reasons for the Merger" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Bluerock's Financial Projections***

36.     The Proxy Statement is materially deficient because it fails to disclose material information relating to the Company's financial projections relied upon by the Company's financial advisor Morgan Stanley in rendering its fairness opinion.

37.     Specifically, in connection with Morgan Stanley's *Discounted Cash Flow Analysis*,

the Proxy Statement states:

> Morgan Stanley calculated a range of implied equity value per share of [Bluerock]
> Common Stock, based on a discounted cash flow analysis utilizing the financial
> projections provided by [Company] management . . . Morgan Stanley performed a
> discounted cash flow analysis, which is designed to imply a value of a company by
> calculating the present value of estimated future unlevered free cash flows, terminal
> value and in the Company's mezzanine and preferred investments. The "unlevered
> free cash flows" or "free cash flows" refer to a calculation of the future cash flows
> of an asset without including, in such calculation, any debt-servicing costs. The
> present value of a terminal value, representing the value of unlevered free cash
> flows beyond the end of the forecast period (excluding unlevered free cash flows
> from mezzanine and preferred investments), and the present value of the
> Company's mezzanine and preferred investments, are added to arrive at a total
> aggregate value. . . .  The projected unlevered free cash flows from September 30,
> 2022 through the end of 2026 were discounted to present value using a range of
> discount rates from 5.4% to 5.8% representing the Company's weighted average
> cost of capital, which weighted average cost of capital was calculated by Morgan
> Stanley based on information provided to it by the Company.

Proxy Statement at 51.  The Proxy Statement fails, however, to disclose the Company's unlevered

free cash flows from September 30, 2022, through the end of 2026 utilized by Morgan Stanley in

its analysis, as well as the line items used in the respective calculations of the Company's unlevered

free cash flows.

38.     The omission of this information renders the statements in the "Financial

Projections" and "Opinion of Morgan Stanley & Co. LLC" sections of the Proxy Statement false

and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Morgan Stanley's Financial Analyses***

39.     The Proxy Statement describes Morgan Stanley's fairness opinion and the various

valuation analyses performed in support of its opinion.  However, the description of Morgan

Stanley's fairness opinion and analyses fails to include key inputs and assumptions underlying

these analyses.  Without this information, as described below, Bluerock's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Morgan Stanley's fairness opinion in determining whether to vote in favor of the Proposed Transaction or seek appraisal.  This omitted information, if disclosed, would significantly alter the total mix of information available to Bluerock's stockholders.

40.     With respect to Morgan Stanley's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the Company's projected unlevered free cash flows from September 30, 2022 through the end of 2026, utilized in the analysis; (ii) quantification of the inputs and assumptions used to derive the discount rate range of 5.4% to 5.8%; (iii) the Company's outstanding debt; (iv) the liquidation value of preferred equity and noncontrolling interests; (v)  the Company's cash on hand as of September 30, 2021; and (vi) the number of fully diluted shares of Company common stock as of September 30, 2021.

41.     When a banker's endorsement of the fairness of a transaction is touted to stockholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be disclosed.

42.     The omission of this information renders the statements in the "Financial Projections" and "Opinion of Morgan Stanley & Co. LLC" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Potential Conflicts of Interest Faced by Morgan Stanley***

43.     The Proxy Statement fails to disclose the potential conflicts of interest faced by the Company's financial advisor Morgan Stanley.

44.     For example, the Proxy Statement sets forth that:

Under the terms of its engagement letter, Morgan Stanley provided our board of directors with financial advisory services and a financial opinion, and we have agreed to pay Morgan Stanley an aggregate fee equal to approximately $29 million, a portion of which is payable quarterly during the term of Morgan Stanley's engagement, a portion of which was contingent upon rendering of Morgan Stanley's financial opinion and a portion of which is contingent upon the closing of the merger. We have also agreed to reimburse Morgan Stanley for its reasonable out-of-pocket expenses, including fees of outside counsel and other professional advisors, incurred in performing its services. In addition, we have agreed to indemnify and hold harmless Morgan Stanley and its affiliates, their respective officers, directors, employees and agents and each other person, if any, controlling Morgan Stanley or any of its affiliates from and against any losses, claims, damages or liabilities relating to, arising out of or in connection with Morgan Stanley's engagement.

*Id*. at 56.   The Proxy Statement fails to disclose quantification of: (i) the portion of Morgan Stanley's fee which is payable quarterly during the term of Morgan Stanley's engagement; (ii) the portion of Morgan Stanley's fee which was contingent upon rendering of Morgan Stanley's financial opinion; and (iii) portion of Morgan Stanley's fee which is contingent upon the closing of the Acquisition.

45.     Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

46.     The omission of this information renders the statements in the "Opinion of Morgan Stanley & Co. LLC" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

47.     The Individual Defendants were aware of their duty to disclose this information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement.  Absent disclosure of the foregoing material information prior to the stockholder vote

on the Proposed Transaction, Plaintiff and the other stockholders of Bluerock will be unable to make a fully-informed decision on whether to vote in favor of the Proposed Transaction or seek appraisal and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

### Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder

48.     Plaintiff repeats all previous allegations as if set forth in full.

49.     During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

50.     By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement.  The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants.  It misrepresented and/or omitted material facts, including material information about the background of the Proposed Transaction, Bluerock's financial projections, the financial analyses performed by the Company's financial advisor, Morgan Stanley and potential conflicts of interest faced by Morgan Stanley.  The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

51.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

52.     By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

53.     Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate.  Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

**Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

54.     Plaintiff repeats all previous allegations as if set forth in full.

55.     The Individual Defendants acted as controlling persons of Bluerock within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Bluerock, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

56.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

57.     Each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.   The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of the Proxy Statement.

58.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.  The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

59.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

60.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' conduct, Bluerock's stockholders will be irreparably harmed.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Bluerock, and against defendants, as follows:

A.    Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Bluerock stockholders;

B.    In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.    Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D.    Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.    Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: March 28, 2022                          **WEISSLAW LLP**

_/s/ Michael A. Rogovin_

Michael A. Rogovin
476 Hardendorf Ave. NE
Atlanta, GA 30307
Tel.: (404) 692-7910
Fax: (212) 682-3010
mrogovin@weisslawllp.com

_Attorneys for Plaintiff_